IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,                   )<br>                  )<br>        Plaintiff-Respondent,     )<br>                  )<br>vs.                      )<br>                  )<br>Nicholas Pablo,                 )<br>                  )<br>        Defendant-Movant.       )<br>_____) | No. CR 03-00764-PHX-JAT<br>No. CV-07-02094-PHX-JAT (JCG)<br><br>**REPORT & RECOMMENDATION** |

Movant Nicholas Pablo is currently confined at USP-Beaumont in Beaumont, Texas. Pending before the Court is Movant's *pro se* Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody. (Doc. No. 1234.)[1] In accordance with the Rules of Practice of the United States District Court for the District of Arizona and 28 U.S.C. § 636(b)(1), this matter was referred to the Magistrate Judge for report and recommendation. As explained below, the Magistrate Judge recommends that the District Court, after its independent review of the record, deny the Motion.

---

[1] Citations to the Court's docket refer to the criminal docket at CR-03-764-PHX-JAT. Hereafter, Doc. No. 1234 will be referred to as "Petition."

**BACKGROUND**

On July 22, 2003, a federal grand jury returned a two-count indictment charging Movant with First Degree Murder, in violation of 18 U.S.C. § 1111, and Conspiracy to Commit Murder, in violation of 18 U.S.C. §§ 1117 and 1111. (Doc. No. 1.) On January 26, 2005, Movant was convicted by a jury of Conspiracy to Commit Murder and was acquitted of First Degree Murder. (Doc. No. 981.) On June 7, 2005, Movant was sentenced to life imprisonment for Conspiracy to Commit Murder and was also ordered to serve five years of supervised release, assessed $100 and ordered to pay restitution. (Doc. No. 1113.)

On June 13, 2005, Movant filed a Notice of Appeal. (Doc. No. 1116.) In his appeal, Movant presented three claims: (1) the district court abused its discretion by denying Movant's motion to sever, (2) the district court erred in permitting inadmissable, prejudicial hearsay, and (3) the district court erroneously denied his motion for judgment of acquittal. (Doc. No. 1171.)[2] On October 23, 2006, the Ninth Circuit rejected the Movant's claims and affirmed the conviction; the mandate issued on December 8, 2006. (*Id.*)

**CLAIMS**

On October 26, 2007, Movant filed the pending *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Movant presents two claims: (1) ineffective assistance of counsel due to (a) counsel's failure to call a defense witness and (b) counsel's improper waiver of Movant's right to a speedy trial, and (2) due process violations stemming from the government's knowing use of the perjured testimony of witnesses Keith Thomas, Pedro Perez-Vega, Agent Kyle Richard and Sean Aguilar.

**LEGAL DISCUSSION**

**A. Standard of Review**

28 U.S.C. § 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was

---

[2]Doc. No. 1171-1 is the mandate issued by the Ninth Circuit. Doc. No. 1171-2 is the appellate court decision.

> imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Thus, in order to prevail on his Petition, Movant must demonstrate that his sentence was imposed in violation of the United States Constitution or federal law. Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts provides, in relevant part, that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party."

**B.  Ineffective Assistance of Counsel**

Pursuant to the Sixth Amendment of the United States Constitution, a criminal defendant has a right to "effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The *Strickland* standard for ineffective assistance of counsel has two components. A defendant must first demonstrate that counsel's performance was deficient, *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed a defendant by the Sixth Amendment. 466 U.S. at 687. This requires the defendant to show that counsel's conduct "fell below an objective standard of reasonableness." 466 U.S. at 687-688. Second, a defendant must show that the mistakes made were "prejudicial to the defense," that is, the mistakes created a "reasonable probability that, but for [the] unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. Counsel's performance is strongly presumed to fall within the ambit of reasonable conduct unless Movant can show otherwise. *Id*. at 689-90.

**1. Counsel's failure to call defense witness to testify**.

Movant has failed to demonstrate that his trial counsel was ineffective. Movant contends that his trial counsel failed to call co-defendant, John Yellowman, as a defense witness, which resulted in the unfair adjudication of the proceedings and his subsequent conviction. Yellowman chose not to testify at the joint trial. "Under the circumstances of a joint trial, of course, counsel for [defendant] could not call [a co-defendant] to the stand."

1   *United States v. Ellsworth*, 481 F.2d 864, 870 (9th Cir. 1973).  Yellowman had a constitutional right not to testify; therefore, Movant's counsel could not force Yellowman to be made a witness in the joint trial.

Movant's counsel filed a motion to sever but only with respect to co-defendants, Keith and Stephanie Thomas. (Doc. No. 681.) The district court judge denied the motion to sever (Doc. No. 711), and the denial was affirmed on appeal. (Doc. No. 1171.) Movant's counsel was not ineffective for failing to file a motion to sever the joint trial with respect to Yellowman. As the Ninth Circuit noted, "[Pablo and co-defendants] argue that the district court abused its discretion by denying their motions to sever. But their defenses were not so antagonistic that severance was required." (*Id.*) Severance is mandated only where there is an adequate showing that the co-defendant is in fact to be called at the movant's separate trial and would in fact testify for him. *Ellsworth*, 481 F.2d at 870. Yellowman chose not to testify at the joint trial and Movant has failed to prove a willingness by Yellowman to testify on his behalf. Movant claims that Yellowman expressed to Movant and his lawyer before trial that he would be willing to testify. (Doc. No. 1235, Ex. 1 at 2.)[3] After a review of all of the attached exhibits, this Court finds no record of such a statement by Yellowman.[4]

Movant has also failed to show that there is a reasonable probability that the jury would have rendered an acquittal had Yellowman testified. Petitioner asserts that Yellowman's testimony would have provided exculpatory evidence and undermined the credibility of Keith Thomas. Movant points to Yellowman's statement to Agent Kyle Richard that he (Yellowman) was the "shot caller," not Keith Thomas (Doc. No. 1084) and that Movant was not involved in the murder. (Doc. No. 1085.) This evidence, however,

---

[3] Doc. No. 1235 is Petitioner's Memorandum of Law in Support of Petitioner's Motion to Set Aside Judgments and Sentences. Hereafter, Doc. No. 1235 will be referred to as Petitioner's Memorandum.

[4] Movant cites to Exhibit B of Petitioner's Memorandum (Doc. No. 1235, Exhibit 2), which is a report of statements made by John Yellowman to FBI agent Kyle Richard. The FBI report does not mention a willingness by Yellowman to testify at trial on Movant's behalf.

was admitted at trial through Agent Richard. Despite having heard Yellowman's confession and exculpatory comments regarding Movant, the jury convicted Movant of conspiracy to commit murder.[5] (Doc. No. 982.) Because the alleged exculpatory testimony was known to the jury, Movant has failed to show that the outcome likely would have been different if Yellowman would have testified at trial.

**2. Counsel's Waiver of Movant's Speedy Trial Rights**

Movant claims that his counsel was ineffective when she improperly waived Movant's right to a speedy trial. Movant alleges that counsel disregarded his request to proceed to trial as soon as possible (Petitioner's Memorandum, Doc. 1235, Ex. 7), which allowed the government time to convince Keith Thomas to testify against Movant.

Movant has failed to demonstrate that counsel's waiver was deficient or prejudicial. As Petitioner acknowledges in his own documents, his counsel waived the right to speedy trial because counsel needed additional time to prepare for trial including time for the preparation of numerous pre-trial motions. (Doc. No. 681 & Petitioner's Memorandum, Doc. 1235, Ex. 1 at 29.)[6] In light of the gravity of the offenses charged, counsel's request for continuances to prepare further was not unreasonable. These are the types of tactical decisions counsel must make, and a tactical decision made by counsel cannot be grounds for an ineffective assistance of counsel claim. *People of Territory of Guam v. Santos*, 741 F.2d 1167, 1169 (9th Cir. 1984). Moreover, Movant has failed to offer any evidence to support his allegation that counsel's waiver of Movant's rights was prejudicial because it gave the government time to persuade Keith Thomas to testify; Movant has failed to demonstrate that the delay affected the outcome of the trial in any manner. (Petitioner's

---

[5] Notably, the fact that Yellowman was acquitted of all charges, despite having implicated himself and exculpated Movant in his statement to Agent Richard, suggests that the jury had some skepticism about the truthfulness of Yellowman's statements. It is also notable that Yellowman later recanted the confession.

[6] Doc. No. 681 is a minute order which refers to the numerous motions filed by Petitioner's counsel before jury trial.

Memorandum, Doc. 1235, Ex. 1 at 31.)  In fact, the jury's acquittal of Movant with respect to the murder charge suggests otherwise.

**C. Due Process Claims Regarding Use of Perjured Testimony**

**1. Procedural Bar to Movant's Due Process Claims**

Although not raised as a defense by the government, Movant's due process claims are procedurally barred.  Claims not raised on direct appeal may not be raised later on collateral review unless the petitioner shows cause and actual prejudice or that he is actually innocent.  *See Massaro v. United States*, 538 U.S. 500, 504 (2003) (*citing United States v. Frady*, 456 U.S. 152, 167-168 (1982)); *Bousley v. United States*, 523 U.S. 614, 621-622 (1998)).[7]  Movant did not assert his due process claims in his direct appeal and fails to show or even allege cause for or prejudice from that failure.  To establish actual innocence, Movant must demonstrate that it is more likely than not that no reasonable juror would have convicted him in light of all the evidence.  *Bousley*, 523 U.S. at 623.  "Actual innocence" means factual innocence, not mere legal insufficiency. *Id.* Movant has failed to demonstrate actual innocence.  Therefore, the claims are procedurally barred.

**2. Movant Has Failed to Show a Due Process Violation**

Even if Movant's due process claims were not procedurally barred, the claims are without merit.  A defendant's Due Process rights are violated if the prosecution knowingly uses false testimony and there is a reasonable likelihood that the false testimony could have affected the outcome of the trial.  *United States v. Sherlock,* 962 F.2d 1349, 1364 (9th Cir. 1992) (*citing United States v. Polizzi*, 801 F. 2d 1543, 1549 (9th Cir. 1986)).  Perjury is defined as "giving false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993).  "[I]nconsistency is not tantamount to perjury absent a showing of known falsehood. If knowing falsehood is not shown, dismissal

---

[7]The procedural default rule is not applied to ineffective assistance of counsel claims raised for the first time in a § 2255 motion.  *Massaro,* 538 U.S. at 509.

- 6 -

1  of an indictment is improper." *United States v. Flake*, 746 F.2d 535, 539 (9th Cir. 1984),
2  *cert. denied*, 469 U.S. 1225 (1985), *overruled on other grounds by United States v. Gaudi*,
3  515 U.S. 506 (1995). In order for a conviction to be vacated based on the use of perjured
4  testimony, the burden is on the moving party to show that the testimony used to prove guilt
5  is purged and that the prosecutor knew this at the time of trial. *Sherlock,* 962 F.2d at 1364
6  (*citing United States v. Agurs*, 427 U.S. 97, 103 (1976)). It does not suffice to assert that
7  the prosecutors' witnesses have presented contradicting testimony, rather, it is incumbent
8  upon the moving party to show that the prosecutor knew which testimony was false and
9  presented the perjured testimony regardless. *Sherlock*, 962 F.2d at 1346.

10  Movant has failed to demonstrate that the prosecution intentionally introduced
11  perjured testimony. Movant alleges that the following witnesses provided false testimony
12  which was knowingly presented by the prosecution: Keith Thomas - nine statements at trial;
13  Pedro Perez-Vega - nine statements at trial; Agent Kyle Richard - ten statements to the
14  grand jury; and Sean Aguilar - ten statements at trial. Movant's conclusion that these
15  witnesses provided false testimony is founded solely on the fact that a witness' testimony
16  contradicts the testimony of another witness. After a careful review of all the witnesses'
17  alleged perjury, the Court concludes that, to the extent the contradictions between the
18  various witnesses' testimony exist, the contradictions are attributable to faulty memory,
19  mistake or confusion and there is no evidence which would support a conclusion that the
20  testimony was an intentional falsehood. In addition, the Court concludes that, regardless
21  of whether the testimony was perjured, Movant has failed to present any evidence that the
22  prosecutor knew that any particular testimony was false.

23  Reviewing the instances of alleged perjury, the Court finds that many of the alleged
24  inconsistencies do not exist. In fact, several of the allegations by Movant are misstatements
25  of the record. For example, Movant claims that Thomas' testimony that he met co-
26  defendant Joseph Fuentes in prison in 1998 was false as evidenced by Fuentes' testimony
27  that he did not arrive at the prison until 2001. (Petitioner's Memorandum, Doc. 1235, Ex.
28  1 at 11.) The record, however, shows that Thomas' testimony was not as definite as Movant

1  represents. When asked at trial when he met Fuentes, Thomas testified: "'98, I think. Like
2  I said, you know, the years all run together." (Petitioner's Memorandum, Doc. 1235, Ex.
3  3 at 4.) By his own statement, Thomas acknowledged that he did not know precisely what
4  year he met Fuentes. Movant has failed to show that Thomas' testimony was a deliberate
5  attempt to mislead.

6  Similarly, Movant claims that Thomas falsely testified that he was <u>not</u> receiving a
7  concurrent sentence per the agreement with the government to testify. In fact, Thomas
8  testified that he did not know whether the sentence would be concurrent or consecutive.
9  (Pet. Mem., Doc. 1235, Ex. A.) He had not yet been sentenced.

10  Another example of Movant misrepresenting the record occurs with respect to his
11  allegation that Sean Aguilar gave false testimony. The testimony in question involved the
12  date a letter arrived at the prison and the date it was delivered to Keith Thomas.
13  (Petitioner's Memorandum, Doc. 1235, Ex. 1 at 28.) The letter was significant because it
14  allegedly confirmed that Lopez-Rocha was "a rat" and therefore could be killed. Movant
15  alleges that Aguilar's testimony that the letter arrived and Thomas received the letter a
16  month before the murder is proven false by the fact that a month before the murder Thomas
17  was imprisoned elsewhere and therefore could not have received the letter. (*Id.*) Aguilar,
18  however, did not testify that Thomas saw the letter a month before the murder. Aguilar
19  testified that a letter confirming Lopez was the rat arrived *"a month or so"* prior to the May
20  9, 2001 murder and that he believed that Thomas had access to it. (Petitioner's
21  Memorandum, Doc. 1235, Ex. 5 at 5.) Aguilar refused to speculate as to a precise date.
22  Defense counsel unsuccessfully attempted to elicit a date from Aguilar and to confirm
23  Thomas' receipt of the letter. With respect to the date of receipt, counsel asked Aguilar:
24  "[I]t's approximately March 15th?" Aguilar responded: "[Y]ou're asking me to speculate?"
25  Defense counsel continued: "[Y]ou understand from talking to Joseph that he gave it [the
26  letter] to Tooter [Thomas]?" Aguilar responded, "[N]o... I understood that Tooter has access
27  to it." (Petitioner's Memorandum, Doc. 1235, Ex. 3 at 15.)

28

- 8 -

1	In some instances, Movant failed to produce any evidence that the testimony was in
2	fact false; he just alleges that it is.   Movant does not show how Thomas' testimony that
3	Movant introduced Fuentes to Thomas is false.  Likewise, he does not demonstrate the
4	falsity of Thomas' testimony that he sent a letter to Movant regarding the murder. Notably,
5	as the government points out, a corrections officer found Movant ripping up a letter from
6	Thomas regarding the murder when the officer went to Movant's cell after the murder.

7	In instances where contradictions between different witnesses' testimony do exist,
8	Movant has failed to demonstrate that the inconsistency was not the result of confusion,
9	mistake or faulty memory or that the inconsistency was material.  None of the alleged
10	inconsistencies is so significant that it rises to the level of perjury absent additional evidence
11	which Movant has failed to provide.  For example, Movant contends that Pedro's trial
12	testimony regarding the circumstances of the murder differed from that given by Agent Kyle
13	Richard to the grand jury. (Petitioner's Memorandum, Doc. 1235, Ex. 1 at 16.)  Pedro
14	testified that the two men were face to face wrestling before the victim was stabbed. (*Id*.)
15	Agent Richard testified before the grand jury that the murderer approached from behind the
16	victim and wrapped the victim in a bear hug. (Petitioner's Memorandum, Doc. 1235, Ex.
17	1 at 16, 18.) This inconsistency does not rise to the level of perjury.  There was no question
18	that Agent Richard was presenting hearsay testimony based on information he had obtained
19	during the numerous interviews taken in this case and based on review of the numerous
20	reports.  Given that Agent Richard was presenting hearsay testimony, it is unlikely that the
21	inconsistencies in the position of the assailant at the time of the murder were the result of
22	intentional falsehoods rather than confusion or mistake and Movant offers no evidence to
23	the contrary.[8]

---

[8]Notably, although Movant claims that Agent Richard's false testimony was used to indict him, of the ten false statements Movant alleges that Agent Richard made to the grand jury, arguably only one pertains to Movant - Agent Richard's testimony that the letters sent to Thomas' wife meant that, "Jesse had better stand up under pressure during the homicide investigation, and better not give any information to the F.B.I." (Petitioner's Memorandum, Doc. 1235, pp. 23-24.)  Movant claims this statement is false based on Thomas' testimony

- 9 -

1  Dismissal of an indictment is only appropriate when a defendant can show a witness
2  knowingly provides false testimony relating to a material matter. *Flake*, 746 F.2d at 539.
3  Movant has failed to meet this burden. Examples of instances in which Movant has failed
4  to show materiality include Aguilar's allegedly false testimony that Thomas had a tattoo on
5  his neck or was a member of the Warrior Society; Aguilar's allegedly false testimony that
6  he did not have contact with Perez-Vega after the incident because he had contact with him
7  at the Lewisburg Penitentiary; Thomas' allegedly false testimony that he was not a member
8  of the LVL gang; and Thomas' allegedly false testimony that he met Fuentes in 1998.

9  In sum, most of the instances of conflicting testimony cited by Movant are, in fact,
10 not conflicting. In those instances where a witness' testimony was contradictory, the
11 contradiction was immaterial or more likely the result of confusion, mistake or faulty
12 memory. *Dunnigan*, 507 U.S. at 94. In addition, Movant has completely failed to
13 demonstrate that in any instance of alleged perjury, the prosecutor knew that a particular
14 witness' testimony was false, *Sherlock,* 962 F.2d at 1364, and none of the specific
15 allegations of perjury were such that the government's knowledge of falsity could be
16 inferred. Notably, in almost all instances cited by Movant, the jury was given the

---

that the letter meant "Jesse better take care of business." Movant was found ripping up the letter after the murder presumably because it demonstrated his involvement and knowledge of the murder. Ironically, Thomas' testimony is more damaging to Movant than Agent Richard's testimony because it demonstrates Movant's knowledge of the homicide prior to its occurrence. In contrast, Agent Richard's testimony does not. Thus, Movant has failed to show that the alleged false testimony materially related to his being indicted for murder and conspiracy to commit murder.

Movant has also failed to show how Agent Richard's other allegedly false statements to the grand jury were material and resulted in his indictment as those statements do not relate to Movant. For example, Movant has failed to demonstrate that it was material to his indictment whether or not the murder occurred before or after 8:00 p.m, whether or not the prison was in lock down for a week or a month, whether or not Fuentes made contact with his family, and whether or not Fuentes procured three shanks to use in the assault.

Finally, an error occurring before a grand jury is rendered harmless by a subsequent conviction at trial. *United States v. Mechanik*, 475 U.S. 66, 70 (1986). As noted above, Movant was convicted of conspiracy to commit murder.

- 10 -

1  opportunity to evaluate the testimony and to determine which witnesses were in the best
2  position to observe, which witnesses may have had a motive to shade the truth, which
3  witnesses had faulty memories, and which witnesses were credible.  Thus, Movant's due
4  process claims may also be denied because Movant has failed to demonstrate that there is
5  a reasonable likelihood that the false testimony could have affected the outcome of the trial.

## RECOMMENDATION

For all of the above reasons, the Magistrate Judge recommends that the District Court, after its independent review, DENY Movant's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody.

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

The parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court. See 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure. Thereafter, the parties shall have ten (10) days within which to file a response to the objections. If any objections are filed, this action should be designated case number: **CV-07-2094-PHX-JAT**.

Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to de novo consideration of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).

DATED this 11th day of August, 2008.

_____
Jennifer C. Guerin
United States Magistrate Judge